UNITED STATES DISTRICT COURT
MIDDLE DISTRICT OF FLORIDA
JACKSONVILLE DIVISION

BERNARD CALVIN HICKS,

       Petitioner,

v.                           Case No. 3:19-cv-879-MMH-LLL

SECRETARY, FLORIDA
DEPARTMENT OF CORRECTIONS,
et al.,

       Respondents.

_____

## ORDER

### I. Status

Petitioner Bernard Hicks, an inmate of the Florida penal system, initiated this action on July 26, 2019, by filing a Petition for Writ of Habeas Corpus under 28 U.S.C. § 2254 (Petition; Doc. 1).[1] In the Petition, Hicks challenges a 2015 state court (Duval County, Florida) judgment of conviction for aggravated battery and attempted armed robbery. He raises two grounds for relief. See Petition at 4-12. Respondents submitted a memorandum in opposition to the Petition. See Response (Doc. 6). They also submitted exhibits.

_____

[1] For purposes of reference to pleadings and exhibits, the Court will cite the document page numbers assigned by the Court's electronic docketing system.

See Docs. 6-1 through 6-3. Hicks filed a brief in reply. See Reply (Doc. 7). This action is ripe for review.

## II. Relevant Procedural History

On April 17, 2014, the State of Florida charged Hicks with aggravated battery (count one) and attempted armed robbery (count two). Doc. 6-1 at 52. On November 4, 2015, at the conclusion of a trial, the jury found Hicks guilty of both counts as charged with a special finding as to count two that Hicks "carried a deadly weapon during the commission of the offense." Id. at 105-06. The trial court sentenced Hicks to concurrent sixteen-year terms of imprisonment for both counts on December 11, 2015. Id. at 139-45.

On direct appeal, Hicks, through counsel, filed a brief pursuant to Anders v. California, 386 U.S. 738 (1967), Doc. 6-2 at 420-30, and a motion to allow Hicks to file a pro se brief, id. at 432-33. The First District Court of Appeal (First DCA) granted permission for Hicks to file a pro se brief. Id. at 435. Hicks did so and later filed an amended pro se brief, arguing that the trial court erred by instructing the jury on a forcible felony exception to the justifiable use of force (ground one) and omitting "including deadly force" from the standard jury instructions on the justifiable use of non-deadly force (ground two). Id. at 437-39, 443-46. The State did not file an answer brief. See

onlinedocketsdca.flcourts.org, Bernard C. Hicks v. State of Florida, 1D15-5691 (Fla. 1st DCA). The First DCA affirmed Hicks's convictions and sentences on June 9, 2016, id. at 455, and issued the mandate on July 6, 2016, id. at 457.

On July 12, 2016, Hicks filed a pro se motion for postconviction relief under Florida Rule of Criminal Procedure 3.850. Doc. 6-2 at 462-81. In his Rule 3.850 Motion, Hicks alleged counsel was ineffective for failing to: (1) object to the trial court instructing the jury on a forcible felony exception to the justifiable use of force; (2) object to the trial court excluding a jury instruction that the justifiable use of force constitutes a defense to attempted robbery; (3) object to the trial court omitting "including deadly force" from the standard jury instruction on the justifiable use of non-deadly force; (4) request a limiting instruction on the jury's use of prior felony convictions; (5) present photographs of Hicks's injuries to support a justifiable use of force defense; (6) object to the prosecutor's comments on facts not in evidence; and (7) object to a law enforcement witness's improper opinion testimony. Id. at 464-78. Hicks also asserted that counsel's cumulative errors denied him a fair trial. Id. at 478-79. On December 19, 2017, the circuit court summarily denied relief on all grounds. Doc. 6-3 at 5-14. The First DCA per curiam affirmed the denial of

3

relief without a written opinion on January 25, 2019, id. at 185, and issued the mandate on February 22, 2019, id. at 188.

### III. One-Year Limitations Period

This action was timely filed within the one-year limitations period. See 28 U.S.C. § 2244(d).

### IV. Evidentiary Hearing

In a habeas corpus proceeding, the burden is on the petitioner to establish the need for a federal evidentiary hearing. See Chavez v. Sec'y, Fla. Dep't of Corr., 647 F.3d 1057, 1060 (11th Cir. 2011). "In deciding whether to grant an evidentiary hearing, a federal court must consider whether such a hearing could enable an applicant to prove the petition's factual allegations, which, if true, would entitle the applicant to federal habeas relief." Schriro v. Landrigan, 550 U.S. 465, 474 (2007); Jones v. Sec'y, Fla. Dep't of Corr., 834 F.3d 1299, 1318-19 (11th Cir. 2016). "It follows that if the record refutes the applicant's factual allegations or otherwise precludes habeas relief, a district court is not required to hold an evidentiary hearing." Schriro, 550 U.S. at 474. The pertinent facts of this case are fully developed in the record before the Court. Because the Court can "adequately assess [Hicks's] claim[s] without

4

further factual development," <u>Turner v. Crosby</u>, 339 F.3d 1247, 1275 (11th Cir. 2003), an evidentiary hearing will not be conducted.

## V. Governing Legal Principles

### A. Standard of Review

The Antiterrorism and Effective Death Penalty Act of 1996 (AEDPA) governs a state prisoner's federal petition for habeas corpus. <u>See</u> <u>Ledford v. Warden, Ga. Diagnostic & Classification Prison</u>, 818 F.3d 600, 642 (11th Cir. 2016). "'The purpose of AEDPA is to ensure that federal habeas relief functions as a guard against extreme malfunctions in the state criminal justice systems, and not as a means of error correction.'" <u>Id.</u> (quoting <u>Greene v. Fisher</u>, 565 U.S. 34, 38 (2011) (quotation marks omitted)). As such, federal habeas review of final state court decisions is "'greatly circumscribed' and 'highly deferential.'" <u>Id.</u> (quoting <u>Hill v. Humphrey</u>, 662 F.3d 1335, 1343 (11th Cir. 2011) (quotation marks omitted)).

The first task of the federal habeas court is to identify the last state court decision, if any, that adjudicated the claim on the merits. <u>See</u> <u>Marshall v. Sec'y, Fla. Dep't of Corr.</u>, 828 F.3d 1277, 1285 (11th Cir. 2016). The state court need not issue a written opinion explaining its rationale in order for the state court's decision to qualify as an adjudication on the merits. <u>See</u> <u>Harrington v. Richter</u>,

562 U.S. 86, 100 (2011). Where the state court's adjudication on the merits is unaccompanied by an explanation, the United States Supreme Court has instructed:

> [T]he federal court should "look through" the unexplained decision to the last related state-court decision that does provide a relevant rationale. It should then presume that the unexplained decision adopted the same reasoning.

Wilson v. Sellers, 138 S. Ct. 1188, 1192 (2018). The presumption may be rebutted by showing that the higher state court's adjudication most likely relied on different grounds than the lower state court's reasoned decision, such as persuasive alternative grounds that were briefed or argued to the higher court or obvious in the record it reviewed. Id. at 1192, 1196.

If the claim was "adjudicated on the merits" in state court, § 2254(d) bars relitigation of the claim unless the state court's decision (1) "was contrary to, or involved an unreasonable application of, clearly established Federal law, as determined by the Supreme Court of the United States;" or (2) "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d); Richter, 562 U.S. at 97-98. The Eleventh Circuit describes the limited scope of federal review pursuant to § 2254 as follows:

6

First, § 2254(d)(1) provides for federal review for claims of state courts' erroneous legal conclusions. As explained by the Supreme Court in Williams v. Taylor, 529 U.S. 362, 120 S. Ct. 1495, 146 L.Ed.2d 389 (2000), § 2254(d)(1) consists of two distinct clauses: a "contrary to" clause and an "unreasonable application" clause. The "contrary to" clause allows for relief only "if the state court arrives at a conclusion opposite to that reached by [the Supreme] Court on a question of law or if the state court decides a case differently than [the Supreme] Court has on a set of materially indistinguishable facts." Id. at 413, 120 S. Ct. at 1523 (plurality opinion). The "unreasonable application" clause allows for relief only "if the state court identifies the correct governing legal principle from [the Supreme] Court's decisions but unreasonably applies that principle to the facts of the prisoner's case." Id.

Second, § 2254(d)(2) provides for federal review for claims of state courts' erroneous factual determinations. Section 2254(d)(2) allows federal courts to grant relief only if the state court's denial of the petitioner's claim "was based on an unreasonable determination of the facts in light of the evidence presented in the State court proceeding." 28 U.S.C. § 2254(d)(2). The Supreme Court has not yet defined § 2254(d)(2)'s "precise relationship" to § 2254(e)(1), which imposes a burden on the petitioner to rebut the state court's factual findings "by clear and convincing evidence." See Burt v. Titlow, 571 U.S. ---, ---, 134 S. Ct. 10, 15, 187 L.Ed.2d 348 (2013); accord Brumfield v. Cain, 576 U.S. ---, ---, 135 S. Ct. 2269, 2282, 192 L.Ed.2d 356 (2015). Whatever that "precise relationship" may be, "'a state-court factual determination is not unreasonable merely because the federal habeas court would have reached a different

> conclusion in the first instance.'"[2] <u>Titlow</u>, 571 U.S. at
> ---, 134 S. Ct. at 15 (quoting <u>Wood v. Allen</u>, 558 U.S.
> 290, 301, 130 S. Ct. 841, 849, 175 L.Ed.2d 738 (2010)).

<u>Tharpe v. Warden</u>, 834 F.3d 1323, 1337 (11th Cir. 2016). Also, deferential review under § 2254(d) generally is limited to the record that was before the state court that adjudicated the claim on the merits. <u>See</u> <u>Cullen v. Pinholster</u>, 563 U.S. 170, 182 (2011) (stating the language in § 2254(d)(1) "requires an examination of the state-court decision at the time it was made").

Thus, "AEDPA erects a formidable barrier to federal habeas relief for prisoners whose claims have been adjudicated in state court." <u>Burt v. Titlow</u>, 134 S. Ct. 10, 16 (2013). "Federal courts may grant habeas relief only when a state court blundered in a manner so 'well understood and comprehended in existing law' and 'was so lacking in justification' that 'there is no possibility fairminded jurists could disagree.'" <u>Tharpe</u>, 834 F.3d at 1338 (quoting <u>Richter</u>, 562 U.S. at 102-03). This standard is "meant to be" a "difficult" one to meet. <u>Richter</u>, 562 U.S. at 102. Thus, to the extent that the petitioner's claims were adjudicated on the merits in the state courts, they must be evaluated under 28 U.S.C. § 2254(d).

---

[2] The Eleventh Circuit has described the interaction between § 2254(d)(2) and § 2254(e)(1) as "somewhat murky." <u>Clark v. Att'y Gen., Fla.</u>, 821 F.3d 1270, 1286 n.3 (11th Cir. 2016).

## B. Exhaustion/Procedural Default

There are prerequisites to federal habeas review. Before bringing a §
2254 habeas action in federal court, a petitioner must exhaust all state court
remedies that are available for challenging his state conviction. See 28 U.S.C.
§ 2254(b)(1)(A). To exhaust state remedies, the petitioner must "fairly
present[]" every issue raised in his federal petition to the state's highest court,
either on direct appeal or on collateral review. Castille v. Peoples, 489 U.S. 346,
351 (1989) (emphasis omitted). Thus, to properly exhaust a claim, "state
prisoners must give the state courts one full opportunity to resolve any
constitutional issues by invoking one complete round of the State's established
appellate review process." O'Sullivan v. Boerckel, 526 U.S. 838, 845 (1999).

In addressing exhaustion, the United States Supreme Court explained:

> Before seeking a federal writ of habeas corpus, a state
> prisoner must exhaust available state remedies, 28
> U.S.C. § 2254(b)(1), thereby giving the State the
> """opportunity to pass upon and correct" alleged
> violations of its prisoners' federal rights."" Duncan v.
> Henry, 513 U.S. 364, 365, 115 S. Ct. 887, 130 L.Ed.2d
> 865 (1995) (per curiam) (quoting Picard v. Connor, 404
> U.S. 270, 275, 92 S. Ct. 509, 30 L.Ed.2d 438 (1971)). To
> provide the State with the necessary "opportunity,"
> the prisoner must "fairly present" his claim in each
> appropriate state court (including a state supreme
> court with powers of discretionary review), thereby
> alerting that court to the federal nature of the claim.
> Duncan, supra, at 365-366, 115 S. Ct. 887; O'Sullivan

9

> v. Boerckel, 526 U.S. 838, 845, 119 S. Ct. 1728, 144
> L.Ed.2d 1 (1999).

Baldwin v. Reese, 541 U.S. 27, 29 (2004).

A state prisoner's failure to properly exhaust available state remedies results in a procedural default which raises a potential bar to federal habeas review. The United States Supreme Court has explained the doctrine of procedural default as follows:

> Federal habeas courts reviewing the constitutionality of a state prisoner's conviction and sentence are guided by rules designed to ensure that state-court judgments are accorded the finality and respect necessary to preserve the integrity of legal proceedings within our system of federalism. These rules include the doctrine of procedural default, under which a federal court will not review the merits of claims, including constitutional claims, that a state court declined to hear because the prisoner failed to abide by a state procedural rule. See, e.g., Coleman,[3] supra, at 747–748, 111 S. Ct. 2546; Sykes,[4] supra, at 84–85, 97 S. Ct. 2497. A state court's invocation of a procedural rule to deny a prisoner's claims precludes federal review of the claims if, among other requisites, the state procedural rule is a nonfederal ground adequate to support the judgment and the rule is firmly established and consistently followed. See, e.g., Walker v. Martin, 562 U.S. --, --, 131 S. Ct. 1120, 1127–1128, 179 L.Ed.2d 62 (2011); Beard v. Kindler, 558 U.S. --, --, 130 S. Ct. 612, 617–618, 175 L.Ed.2d 417 (2009). The doctrine barring procedurally defaulted

---

[3] Coleman v. Thompson, 501 U.S. 722 (1991).
[4] Wainwright v. Sykes, 433 U.S. 72 (1977).

10

> claims from being heard is not without exceptions. A
> prisoner may obtain federal review of a defaulted
> claim by showing cause for the default and prejudice
> from a violation of federal law. See Coleman, 501 U.S.,
> at 750, 111 S. Ct. 2546.

Martinez v. Ryan, 132 S. Ct. 1309, 1316 (2012). Thus, procedural defaults may

be excused under certain circumstances. Notwithstanding that a claim has

been procedurally defaulted, a federal court may still consider the claim if a

state habeas petitioner can show either (1) cause for and actual prejudice from

the default; or (2) a fundamental miscarriage of justice. Ward v. Hall, 592 F.3d

1144, 1157 (11th Cir. 2010). In order for a petitioner to establish cause,

> the procedural default "must result from some
> objective factor external to the defense that prevented
> [him] from raising the claim and which cannot be
> fairly attributable to his own conduct." McCoy v.
> Newsome, 953 F.2d 1252, 1258 (11th Cir. 1992)
> (quoting Carrier, 477 U.S. at 488, 106 S. Ct. 2639).[5]
> Under the prejudice prong, [a petitioner] must show
> that "the errors at trial actually and substantially
> disadvantaged his defense so that he was denied
> fundamental fairness." Id. at 1261 (quoting Carrier,
> 477 U.S. at 494, 106 S. Ct. 2639).

Wright v. Hopper, 169 F.3d 695, 706 (11th Cir. 1999).

In the absence of a showing of cause and prejudice, a petitioner may

receive consideration on the merits of a procedurally defaulted claim if the

---

[5] Murray v. Carrier, 477 U.S. 478 (1986).

11

petitioner can establish that a fundamental miscarriage of justice, the continued incarceration of one who is actually innocent, otherwise would result. The Eleventh Circuit has explained:

> [I]f a petitioner cannot show cause and prejudice, there remains yet another avenue for him to receive consideration on the merits of his procedurally defaulted claim. "[I]n an extraordinary case, where a constitutional violation has probably resulted in the conviction of one who is actually innocent, a federal habeas court may grant the writ even in the absence of a showing of cause for the procedural default." Carrier, 477 U.S. at 496, 106 S. Ct. at 2649. "This exception is exceedingly narrow in scope," however, and requires proof of actual innocence, not just legal innocence. Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001).

Ward, 592 F.3d at 1157. "To meet this standard, a petitioner must 'show that it is more likely than not that no reasonable juror would have convicted him' of the underlying offense." Johnson v. Alabama, 256 F.3d 1156, 1171 (11th Cir. 2001) (quoting Schlup v. Delo, 513 U.S. 298, 327 (1995)). Additionally, "'[t]o be credible,' a claim of actual innocence must be based on reliable evidence not presented at trial." Calderon v. Thompson, 523 U.S. 538, 559 (1998) (quoting Schlup, 513 U.S. at 324). With the rarity of such evidence, in most cases, allegations of actual innocence are ultimately summarily rejected. Schlup, 513 U.S. at 324.

## C. Ineffective Assistance of Trial Counsel

"The Sixth Amendment guarantees criminal defendants the effective assistance of counsel. That right is denied when a defense attorney's performance falls below an objective standard of reasonableness and thereby prejudices the defense." Yarborough v. Gentry, 540 U.S. 1, 5 (2003) (per curiam) (citing Wiggins v. Smith, 539 U.S. 510, 521 (2003), and Strickland v. Washington, 466 U.S. 668, 687 (1984)).

> To establish deficient performance, a person challenging a conviction must show that "counsel's representation fell below an objective standard of reasonableness." [Strickland,] 466 U.S. at 688, 104 S. Ct. 2052. A court considering a claim of ineffective assistance must apply a "strong presumption" that counsel's representation was within the "wide range" of reasonable professional assistance. Id., at 689, 104 S. Ct. 2052. The challenger's burden is to show "that counsel made errors so serious that counsel was not functioning as the 'counsel' guaranteed the defendant by the Sixth Amendment." Id., at 687, 104 S. Ct. 2052.
>
> With respect to prejudice, a challenger must demonstrate "a reasonable probability that, but for counsel's unprofessional errors, the result of the proceeding would have been different. A reasonable probability is a probability sufficient to undermine confidence in the outcome." Id., at 694, 104 S. Ct. 2052. It is not enough "to show that the errors had some conceivable effect on the outcome of the proceeding." Id., at 693, 104 S. Ct. 2052. Counsel's errors must be "so serious as to deprive the defendant of a fair trial, a

trial whose result is reliable." <u>Id.</u>, at 687, 104 S. Ct. 2052.

<u>Richter</u>, 562 U.S. at 104. The Eleventh Circuit has recognized "the absence of any iron-clad rule requiring a court to tackle one prong of the <u>Strickland</u> test before the other." <u>Ward</u>, 592 F.3d at 1163. Since both prongs of the two-part <u>Strickland</u> test must be satisfied to show a Sixth Amendment violation, "a court need not address the performance prong if the petitioner cannot meet the prejudice prong, and vice-versa." <u>Id.</u> (citing <u>Holladay v. Haley</u>, 209 F.3d 1243, 1248 (11th Cir. 2000)). As stated in <u>Strickland</u>: "If it is easier to dispose of an ineffectiveness claim on the ground of lack of sufficient prejudice, which we expect will often be so, that course should be followed." <u>Strickland</u>, 466 U.S. at 697.

A state court's adjudication of an ineffectiveness claim is accorded great deference.

> "[T]he standard for judging counsel's representation is a most deferential one." <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788. But "[e]stablishing that a state court's application of <u>Strickland</u> was unreasonable under § 2254(d) is all the more difficult. The standards created by <u>Strickland</u> and § 2254(d) are both highly deferential, and when the two apply in tandem, review is doubly so." <u>Id.</u> (citations and quotation marks omitted). "The question is not whether a federal court believes the state court's determination under the <u>Strickland</u> standard was incorrect but whether that

14

> determination was unreasonable - a substantially higher threshold." <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123, 129 S. Ct. 1411, 1420, 173 L.Ed.2d 251 (2009) (quotation marks omitted). If there is "any reasonable argument that counsel satisfied <u>Strickland</u>'s deferential standard," then a federal court may not disturb a state-court decision denying the claim. <u>Richter</u>, - U.S. at -, 131 S. Ct. at 788.

<u>Hittson v. GDCP Warden</u>, 759 F.3d 1210, 1248 (11th Cir. 2014); <u>Knowles v. Mirzayance</u>, 556 U.S. 111, 123 (2009). In other words, "[i]n addition to the deference to counsel's performance mandated by <u>Strickland</u>, the AEDPA adds another layer of deference--this one to a state court's decision--when we are considering whether to grant federal habeas relief from a state court's decision." <u>Rutherford v. Crosby</u>, 385 F.3d 1300, 1309 (11th Cir. 2004). As such, "[s]urmounting <u>Strickland</u>'s high bar is never an easy task." <u>Padilla v. Kentucky</u>, 559 U.S. 356, 371 (2010).

## VI. Findings of Fact and Conclusions of Law

### A. Ground One

Hicks alleges counsel was ineffective because he failed to present photographs of bruises that Hicks sustained during an altercation with the victim, Henry Scott. Petition at 4-7. Hicks asserts that the Public Defender's Office sent an investigator to the Duval County Jail to interview him on the day after his arrest. <u>Id.</u> at 4. At that time, the investigator photographed

Hicks's injuries, including a swollen lip and bruises on his wrist and shoulder. Id. Hicks contends the photographs would have corroborated his self-defense theory and strengthened his credibility as a witness. Id. at 6-7. According to Hicks, if the jurors had seen the photographs, they would have believed his self-defense theory and acquitted him of all charges. Id. at 7.

Hicks raised a similar claim in state court as ground five of his Rule 3.850 Motion. Doc. 6-2 at 473-75. In denying relief, the circuit court explained:

> Defendant alleges counsel was ineffective for failing to present evidence of the bruises Defendant received during his altercation with the victim. Specifically, Defendant contends that an investigator for the Office of the Public Defender took photographs of Defendant at the jail shortly after the incident. Defendant states this evidence would have combated the State's arguments that a "poor old defenseless man" was beaten by a bigger, unscathed Defendant as well as supported his theory of self-defense.
>
> At trial, the State presented a picture of Defendant's face to the jury, so that he could point out any injuries he sustained, and Defendant said his lip was swollen, but acknowledged he had no broken skin. Defendant further testified that an investigator from the Office of the Public Defender took pictures of him after the incident and that his wrist and shoulder were bruised. This Court finds that even if Defendant was able to show a picture of a bruised wrist and shoulder, there is no reasonable probability the result of the proceeding would have been different. This is particularly true in light of the victim's injuries, including knocked out teeth, swollen face, and stitches

16

> to the victim's ear. Moreover, this is true due to the
> fact that the jury obviously did not believe Defendant's
> account of the night, and rather believed that
> Defendant had attempted to rob the victim and, in the
> process, injured him severely. Lastly, while the
> pictures were not shown, Defendant did testify to
> those injuries at trial. Defendant is, therefore, not
> entitled to relief.

Doc. 6-3 at 10 (record citations omitted). The First DCA per curiam affirmed

the denial of relief without a written opinion. Id. at 185.

To the extent that the First DCA denied this claim on the merits,[6] the

Court will address the claim in accordance with the deferential standard for

federal court review of state court adjudications. After a review of the record

and the applicable law, the Court concludes that the state court's adjudication

of this claim was not contrary to clearly established federal law, did not involve

an unreasonable application of clearly established federal law, and was not

based on an unreasonable determination of the facts in light of the evidence

presented in the state court proceedings. Therefore, Hicks is not entitled to

relief on the basis of this claim.

---

[6] In looking through the appellate court's per curiam affirmance to the
circuit court's "relevant rationale," the Court presumes that the appellate court
"adopted the same reasoning." Wilson, 138 S. Ct. at 1194.

Nevertheless, even if the appellate court's adjudication of the claim is not entitled to deference, Hicks's ineffectiveness claim is without merit because the record supports the postconviction court's conclusion. Hicks has not demonstrated counsel's failure to submit the photographs as evidence prejudiced the defense. Jacksonville Sheriff's Office Detective Andrew Kipple testified to photographing Hicks on the night of his arrest. Doc. 6-2 at 111-12, 121. The jury viewed a photograph of Hicks from the night of his arrest and knew about the photographs of the bruises. Id. at 121. Detective Kipple also testified that he did not observe any injuries on Hicks. Id. at 122.

During Hicks's testimony, the State again presented the photograph and asked Hicks to locate where the victim had hit him. Doc. 6-2 at 205-06. Hicks testified the victim hit his bottom lip, and he pointed to swelling on his lip in the photograph. Id. at 206. He further noted that the victim hit his shoulder. Id. at 218. Hicks testified that an investigator from the Public Defender's Office photographed him on the day after his arrest. Id. The photographs showed bruising on his wrist and shoulder. Id. Despite this testimony, the jury still found Hicks did not act in self-defense. On this record, no reasonable probability exists that photographs of bruises on Hicks's wrist and shoulder would have produced a different outcome at trial.

18

Moreover, photographs of Hicks's bruises would not undermine the victim's testimony that Hicks attacked him. The victim testified to "tussling" with Hicks. Doc. 6-2 at 45. On cross-examination, he admitted to striking and holding onto Hicks so Hicks would not push him over the coffee table in the living room. Id. at 68. Based on the victim's version of events, the jury could have concluded that even though Hicks sustained bruises during the incident, he did not act in self-defense. A reasonable probability does not exist that the introduction of photographs showing bruises on Hicks's wrist and shoulder would have resulted in the jury finding Hicks's testimony more credible than the victim's testimony. As such, Hicks cannot demonstrate prejudice, and relief on the claim in ground one is due to be denied. See Strickland, 466 U.S. at 697 ("[T]here is no reason for a court deciding an ineffective assistance claim . . . to address both components of the inquiry if the defendant makes an insufficient showing on one.").

## B. Ground Two

Hicks claims counsel was ineffective when he failed to object to improper opinion testimony from a law enforcement witness, Officer M.L. Herrera. Petition at 8-11. In his Reply, Hicks withdraws the claim in ground two "after

19

carefully researching the relevant case law. . . ." Reply at 1. Therefore, the Court deems ground two to be withdrawn and will not address it.

## VII. Certificate of Appealability

## Pursuant to 28 U.S.C. § 2253(c)(1)

If Hicks seeks issuance of a certificate of appealability, the undersigned opines that a certificate of appealability is not warranted. The Court should issue a certificate of appealability only if the petitioner makes "a substantial showing of the denial of a constitutional right." 28 U.S.C. § 2253(c)(2). To make this substantial showing, Hicks "must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong," Tennard v. Dretke, 542 U.S. 274, 282 (2004) (quoting Slack v. McDaniel, 529 U.S. 473, 484 (2000)), or that "the issues presented were 'adequate to deserve encouragement to proceed further,'" Miller-El v. Cockrell, 537 U.S. 322, 335-36 (2003) (quoting Barefoot v. Estelle, 463 U.S. 880, 893 n.4 (1983)).

Where a district court has rejected a petitioner's constitutional claims on the merits, the petitioner must demonstrate that reasonable jurists would find the district court's assessment of the constitutional claims debatable or wrong. See Slack, 529 U.S. at 484. However, when the district court has rejected a

20

claim on procedural grounds, the petitioner must show that "jurists of reason would find it debatable whether the petition states a valid claim of the denial of a constitutional right and that jurists of reason would find it debatable whether the district court was correct in its procedural ruling." Id. Upon consideration of the record as a whole, the Court will deny a certificate of appealability.

Therefore, it is now

**ORDERED AND ADJUDGED:**

1.    The Petition (Doc. 1) is **DENIED**, and this action is **DISMISSED WITH PREJUDICE**.

2.    The Clerk of the Court shall enter judgment denying the Petition and dismissing this case with prejudice.

3.    If Hicks appeals the denial of the Petition, the Court denies a certificate of appealability. Because the Court has determined that a certificate of appealability is not warranted, the Clerk shall terminate from the pending motions report any motion to proceed on appeal as a pauper that may be filed in this case. Such termination shall serve as a denial of the motion.

21

4.    The Clerk of the Court is directed to close this case and terminate any pending motions.

**DONE AND ORDERED** at Jacksonville, Florida, this 18th day of April, 2022.

**MARCIA MORALES HOWARD**
United States District Judge

Jax-9

C:    Bernard Calvin Hicks #957557
      Counsel of record

22